MUNGER, TOLLES & OLSON LLP
James C. Rutten (State Bar No. 201791)
Joseph N. Glynn (State Bar No. 337652)
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
joseph.glynn@mto.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MATTHEW KENNEY,<br>Plaintiff,<br>vs.<br>WELLS FARGO BANK, N.A.,<br>Defendant. | Case No. 2:25-cv-04845-CAS (PDx)<br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br>[Proposed Order filed concurrently herewith]<br>Judge: Honorable Christina A. Snyder<br>Date: July 14, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8D |

TO THE COURT AND TO PLAINTIFF:

PLEASE TAKE NOTICE that on July 14, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D at the United States Courthouse located at 350 West First Street, Los Angeles, California, 90012, before the Honorable Christina A. Snyder, Defendant Wells Fargo Bank, N.A. will and hereby does move the Court for an order dismissing Plaintiff's Complaint (ECF 1-1) and all claims therein with prejudice under Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(6), and 17. This Motion is brought on the grounds set forth in the attached Memorandum of Points and Authorities, including: (i) Plaintiff lacks standing to assert the subject claims, and is not the real party in interest on those claims; (ii) the Complaint does not state a claim on which relief may be granted, and as a matter of law cannot do so based on the facts alleged; and (iii) the claims are largely barred by applicable statutes of limitations.

This Motion is made following the conference required by Local Rule 7-3, which took place on May 27, 2025 between Plaintiff and counsel for Wells Fargo.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Proposed Order filed herewith, any reply papers Wells Fargo may submit, the complete files and records in this litigation, and such additional matters as the Court may consider at the hearing on this Motion or otherwise.

DATED: June 5, 2025

MUNGER, TOLLES & OLSON LLP

By: /s/ James C. Rutten
James C. Rutten

Attorneys for Defendant WELLS FARGO BANK, N.A.

55166184.4

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....3
MEMORANDUM OF POINTS AND AUTHORITIES....9
I. INTRODUCTION....9
II. BACKGROUND....10
A. Plaintiff's History Of Shuttered Restaurants, Angry Investors, Unpaid Debts, And Endless Litigation....10
B. Plaintiff's Pro Se Litigation Offensive Against Financial Institutions....12
III. ANALYSIS....14
A. The Complaint Should Be Dismissed Under FRCP 12(b)(1) And FRCP 17 Because Plaintiff Does Not Hold The Claims....17
B. The Complaint Should Be Dismissed Under FRCP 12(b)(6) Because Plaintiff Does Not And Cannot State A Viable Claim....17
1. The Claims Are Categorically Foreclosed....10
2. The Claims Fail On Individual Claim-Specific Grounds....20
3. The Claims Are Largely Time-Barred....27
IV. CONCLUSION....30

# TABLE OF AUTHORITIES

## CASES

*AARTS Prods., Inc. v. Crocker Nat'l Bank*,
179 Cal.App.3d 1061 (1986) ........ 19

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, N.A.*,
491 F. Supp. 3d 727 (E.D. Cal. 2020) ........ 27

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) ........ 28

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011) ........ 25

*AmerUS Life Ins. Co. v. Bank of Am., N.A.*,
143 Cal.App.4th 631 (2006) ........ 28

*Anderson v. PHH Mortg.*,
2012 WL 4496341 (C.D. Cal. 2012) ........ 25

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ........ 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 22

*Brown v. Department of Water & Power*,
2024 WL 5466666 (C.D. Cal. 2024) ........ 15

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ........ 21

*Casey v. U.S. Bank*,
127 Cal.App.4th 1138 (2005) ........ 17, 18, 22

*Chicago Title Ins. Co. v. Superior Court*,
174 Cal.App.3d 1142 (1985) ........ 18

*Colenzo v. FDIC*,
2011 WL 13177024 (C.D. Cal. 2011) ........ 21

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ........ 21

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
753 F.3d 862 (9th Cir. 2014) ........ 24

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ........ 27

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ........ 30

*Freeney v. Bank of Am. Corp.*,
2015 WL 12535021 (C.D. Cal. 2015) ........ 23

*Gainesville Investor, LLC v. Astroenergy Solar, Inc.*,
2022 WL 1422810 (C.D. Cal. 2022) ........ 15

*Guzman v. Polaris Indus., Inc.*,
49 F.4th 1308 (9th Cir. 2022) ........ 23

*Healthcare Ally Mgmt. of Cal. LLC v. United Healthcare Servs., Inc.*,
2023 WL 11053462 (C.D. Cal. 2023) ........ 28

*Howard v. Gerber Prods. Co.*,
2024 WL 5264036 (N.D. Cal. Dec. 31, 2024) ........ 12

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
487 F. App'x 362 (9th Cir. 2012) ........ 17

*Imac Funding Corp. v. Endresen*,
2015 WL 13916649 (C.D. Cal. 2015) ........ 22

*In re Tobacco II Cases*,
46 Cal.4th 298 (2009) ........ 24

*In re U.S. Invs. Co. of Am.*,
5 F. App'x 779 (9th Cir. 2001) ........ 28

*In re Woodbridge Invs. Litig.*,
2020 WL 4529739 (C.D. Cal. 2020) ........ 26

*Jaffee v. Carryl*,
2016 WL 3511782 (C.D. Cal. 2016) ........ 27

*Kaggen v. IRS*,
71 F.3d 1018 (2d Cir. 1995) ........ 29

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal.App.3d 1220 (1991) ........ 16

*Lazar v. Superior Court*,
12 Cal.4th 631 (1996) ........ 21

*Lightner v. Medtronic Inc.*,
2021 WL 4731351 (C.D. Cal. 2021) ........ 24

*Lum v. Merlin Entm'ts Group U.S. Holdings, Inc.*,
2023 WL 2583307 (S.D. Cal. 2023) ........ 22

*Madrid v. Perot Sys. Corp.*,
130 Cal.App.4th 440 (2005) ........ 17

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. 2017) ........ 27

*Marsh v. Zaazoom Sols., LLC*,
2012 WL 952226 (C.D. Cal. 2012) ........ 24

*MUR Shipping B.V. v. Bank of Am., N.A.*,
2019 WL 13133670 (C.D. Cal. 2019) ........ 10, 19, 20

*Myers v. Stephens*,
233 Cal.App.2d 104 (1965) ........ 17

*Norgart v. Upjohn Co.*,
21 Cal.4th 383 (1999) ........ 28

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) (en banc) ........ 21

*Poston v. Gen. Motors, LLC*,
2024 WL 3558377 (S.D. Cal. 2024) ........ 25

*QDOS, Inc. v. Signature Fin., LLC*,
17 Cal.App.5th 990 (2017) ........ 17

*Rand v. Midland Nat. Life Ins.*,
857 Fed. App'x 343 (9th Cir. 2021) ........ 30

*S&S Worldwide, Inc. v. Wells Fargo Bank, N.A.*,
509 F. Supp. 3d 1154 (N.D. Cal. 2020) ........ 23

*Sandoval v. Lockheed Martin Corp.*,
2025 WL 1127853 (C.D. Cal. 2025) .......... 16, 24

*ScoreBlue, LLC v. Locum Tele PC*,
2024 WL 5372398 (C.D. Cal. 2024) .......... 13

*Sliders Trading Co. v. Wells Fargo Bank, N.A.*,
2017 WL 6539843 (N.D. Cal. 2017) .......... 17, 20

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
49 Cal.App.4th 472 (1996) .......... 17

*Solarmore Mgmt. Servs., Inc. v. Bankruptcy Estate of DC Solar Sols.*,
2021 WL 3077470 (E.D. Cal. 2021) .......... 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 23

*Steele Logistics Inc. v. Advance Funds Network LLC*,
2025 WL 870124 (C.D. Cal. 2025) .......... 27

*Superclinics USA, Inc. v. JPMorgan Chase Bank, N.A.*,
2023 WL 5007873 (C.D. Cal. 2023) .......... 23

*Terpin v. AT&T Mobility LLC*,
118 F.4th 1102 (9th Cir. 2024) .......... 11

*Trabulsi v. Wells Fargo Bank, N.A.*,
2018 WL 6444897 (C.D. Cal. 2018) .......... 20

*United States v. Ali*,
2014 WL 5790996 (D. Md. 2014) .......... 29

*United States v. Tervort*,
2008 WL 5273492 (E.D. Cal. 2008) .......... 29

*Vacchiano v. Wessell*,
2014 WL 1225301 (C.D. Cal. 2014) .......... 15

*Venture Gen. Agency, LLC v. Wells Fargo Bank N.A.*,
2019 WL 5213005 (N.D. Cal. 2019) .......... 20

*Wilber v. Bank of Am., N.A.*,
2015 WL 13919430 (C.D. Cal. 2015) .......... 27

*Williams v. J.P. Morgan Chase Bank, N.A.*, 2023 WL 3590682 (N.D. Cal. 2023) ........ 26

*Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239 (2007) ........ 18

**STATUTES**

Annunzio-Wylie Money Laundering Act of 1992 (106 Stat. 4044) ........ 25

Anti-Money Laundering Act of 2020 (134 Stat. 3388) ........ 25

12 U.S.C. § 5565 ........ 26

18 U.S.C. § 1028 ........ 26

California Business & Professions Code § 17200 ........ 13, 25

California Business & Professions Code § 17208 ........ 28

California Code of Civil Procedure § 338 ........ 27

California Commercial Code § 11207 ........ 18

California Commercial Code § 11404 ........ 18

California Financial Code § 1450 ........ 19, 20, 25

**RULES AND REGULATIONS**

12 C.F.R. § 21.11 ........ 26

12 C.F.R. § 208.62 ........ 26, 27

31 C.F.R. § 1020.320 ........ 26

Federal Rule of Civil Procedure 9 ........ 10, 20, 21, 22

Federal Rule of Civil Procedure 12 ........ 11, 14, 17

Federal Rule of Civil Procedure 17 ........ 14, 15

**OTHER AUTHORITIES**

Uniform Commercial Code § 4A-207 ........ 18

Uniform Commercial Code § 4A-404 ........ 18

Brett Anderson, *Behind a Vegan Chef's Holistic Empire, an Ugly Reality*, N.Y. Times, Apr. 22, 2024 ........ 11, 12

Matthew Kenney, *Cooked Raw* (2015) ........ 10

Daniel Miller & Roger Vincent, *From "Bad Vegan" to Mass Restaurant Closures—Inside Matthew Kenney's Crumbling Food Empire*, L.A. Times, Jan. 10, 2024 ........ 9

Financial Crimes Enforcement Network, *The Bank Secrecy Act* ........ 26

## I. INTRODUCTION

Plaintiff seeks to hold Wells Fargo Bank, N.A. ("Wells Fargo") liable for performing ordinary banking functions that the law both permitted and required it to perform. Because his case is foreclosed by controlling statutes and decades of case law, it should be dismissed with prejudice.

Plaintiff is a celebrity chef, restauranteur, and voracious consumer of judicial services. According to his own pleadings, he has a two-decade history of opening, and quickly shuttering, dozens of splashy vegan restaurants, leaving behind "a pile of unpaid bills" and "disgruntled investors, landlords[,] and employees in cities across the country."[1] He has been a constant presence in the court system since the early 2000s, defending myriads of government and private actions from coast to coast. In 2025, he shifted tactics and went on the offensive, filing a bevy of pro se complaints that blame high-profile financial institutions for his most recent travails. His core allegation is that Matthew Bronfeld, a former executive of Plaintiff's company MK Cuisine Global, LLC (the "LLC"), transferred funds out of the LLC's bank accounts without Plaintiff's permission, and that the LLC's banks should have realized the transfers were *ultra vires* and should not have permitted them.

While Plaintiff's theory against the LLC's banks is dubious at best—the courts have already begun dismissing those cases—his case against Wells Fargo is downright frivolous. He did not have accounts at Wells Fargo, nor did the LLC. Rather, he seeks to hold Wells Fargo liable merely because Bronfeld transferred some of the money *to* accounts at Wells Fargo. Plaintiff ignores that a third-party bank has neither the right nor the ability to judge whether an incoming transfer is

[1] Complaint Ex. E (Daniel Miller & Roger Vincent, *From "Bad Vegan" to Mass Restaurant Closures—Inside Matthew Kenney's Crumbling Food Empire*, L.A. Times, Jan. 10, 2024) at 2. Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted, unless otherwise indicated.

authorized, and therefore (i) is *statutorily required* when accepting incoming funds to credit the customer account to which they are directed; (ii) is *statutorily prohibited* from returning the money at the request of the originating accountholder and against its customer's wishes absent a court order or other formal process; and (iii) is *statutorily immunized* from liability in this situation. Accordingly, it is black letter law that although a "[p]laintiff … may have claims against the actual perpetrator of [a] fraud, … an attempt to hold [the perpetrator's bank] liable for the swindle is misplaced." *MUR Shipping B.V. v. Bank of Am., N.A.*, 2019 WL 13133670, *4 (C.D. Cal. 2019).

All of the claims fail on this basis as a matter of law. They also fail on numerous additional grounds, including: (i) Plaintiff lacks standing, because he admits that the money did not belong to him personally, but instead is "the rightful property of MK Cuisine Global, LLC";[2] (ii) he fails to plead the basic elements of any of the claims he asserts, and certainly does not do so with the particularity required by FRCP 9(b); and (iii) he waited more than three years, and in some cases more than four years, after the wire transfers to file suit, which renders the claims almost entirely time-barred. Because Plaintiff has not stated a viable claim and cannot possibly amend to do so, this case should be dismissed with prejudice.

## II. BACKGROUND

### A. Plaintiff's History Of Shuttered Restaurants, Angry Investors, Unpaid Debts, And Endless Litigation

Plaintiff bills himself as a "celebrity chef."[3] According to his Complaint's exhibits, he and his girlfriend and business partner were "the first couple of raw veganism" before she got indicted for defrauding investors, went on the lam for a

[2] Complaint ¶ 17.

[3] Matthew Kenney, *Cooked Raw*, at 69 (2015) (Plaintiff's autobiography).

year until finding a new home on Rikers Island, and later landed a Netflix gig.[4] "[M]edia savvy and prolific, [Plaintiff] ha[d] a knack for opening restaurants that make a splash—and then quietly close not too long after with a pile of unpaid bills."[5] His *modus operandi* was "every time one business goes bad, he opens a new one."[6]

Plaintiff's "landlords, partners and ex-employees … [have] accused [Plaintiff] and his companies of not paying millions of dollars in rent, failing to return $1 million to an investor, not paying restaurant suppliers for food, and bouncing paychecks to workers."[7] He has faced untold numbers of government and private lawsuits, with his "legal adversaries alleg[ing] he uses an array of limited liability companies to shield himself from the consequences of busted ventures, commingling funds from separate companies and diverting money for his personal use."[8] Plaintiff has fared poorly in these legal battles; for example, "a judge overseeing [a] case" alleging he "had provided [an] investor with false financial information" reportedly ordered his "companies to pay $1.17 million, with [Plaintiff] personally liable for about $192,000 of that sum."[9]

At some point, Plaintiff's LLC hired Bronfeld,[10] and, according to a *New York Times* exposé, Plaintiff gave him "operational oversight of [numerous] restaurants

---

[4] Complaint Ex. E at 7; *see also id.* Ex. E at 3 ("Kenney [is] the former boyfriend and partner of Sarma Melngailis, the convicted fraudster whose downfall was documented in Netflix's 'Bad Vegan' … ."). "When reviewing a[] … Fed. R. Civ. P. 12(b)(6) motion, [the court] may consider documents attached to and referenced in the complaint." *Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1111 (9th Cir. 2024).

[5] Complaint Ex. E at 2.

[6] *Id.* Ex. E at 2.

[7] *Id.* Ex. E at 2.

[8] *Id.* Ex. E at 2.

[9] *Id.* Ex. E at 11.

[10] *Id.* ¶ 14.

in the United States from 2018 to 2023."[11] "Bronfeld had an unusual background for the job, having been convicted in 2015 of grand larceny and sentenced to five years' probation for embezzling more than $400,000 from former business associates."[12] Plaintiff reportedly "knew of the conviction when Mr. Bronfeld was promoted to [a] director role after just a year with the company."[13]

Plaintiff now professes to be "shocked, shocked" that his own company allegedly fell victim to the same conduct. Plaintiff alleges that in 2021 and 2022, Bronfeld "embezzl[ed] at least $608,082.24" by wiring money from "accounts at Bank of America, JPMorgan Chase, and California Bank & Trust to personal accounts and shell company accounts he held at Wells Fargo."[14] Although Plaintiff refers to the originating accounts as "Plaintiff's accounts,"[15] this appears to be a generic shorthand; Plaintiff elsewhere specifies that "*the Company's* assets were misappropriated,"[16] that Bronfeld "stole MK Cuisine Global, LLC funds,"[17] and that the money is "the rightful property of MK Cuisine Global, LLC."[18]

**B. <u>Plaintiff's Pro Se Litigation Offensive Against Financial Institutions</u>**

Plaintiff does not contest that he could see each of the wire transfers in nearly real time in the monthly account statements provided by the LLC's banks. He

---

[11] Brett Anderson, *Behind a Vegan Chef's Holistic Empire, an Ugly Reality*, N.Y. Times, Apr. 22, 2024, *available at* https://www.nytimes.com/2024/04/22/dining/vegan-chef-matthew-kenney.html. "Judicial notice can be taken of the existence of … *New York Times* article[s]" because the articles are publicly available and their existence and contents are not subject to reasonable dispute. *Howard v. Gerber Prods. Co.*, 2024 WL 5264036, *1 (N.D. Cal. Dec. 31, 2024).

[12] Anderson, *supra*.

[13] *Id.*

[14] Complaint ¶¶ 2, 15.

[15] *Id.* ¶ 2.

[16] *Id.* Ex. D (Letter from Plaintiff to Wells Fargo) at 1.

[17] *Id.* ¶ 17.

[18] *Id.*

nevertheless let several years go by, and then, in February 2025, filed a flurry of pro se lawsuits against the LLC's banks and against other financial firms with which the LLC had contractual relationships. To date, he has sued Bank of America, N.A. ("BofA");[19] JPMorgan Chase Bank, National Association;[20] Fifth Third Bancorp and its affiliate Prepaid Expense Card Solutions, Inc.;[21] and PayPal Holdings, Inc.[22] His case against BofA recently was dismissed by Judge Court with leave to amend certain claims, as reflected in her order attached as Exhibit 1 hereto. Motions to dismiss the other cases are pending.

In April 2025, Plaintiff filed another Complaint, this time against Wells Fargo, alleging claims under California law for fraud, aiding and abetting fraud, aiding and abetting conversion, unjust enrichment, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and constructive trust.[23] He case against Wells Fargo is different from the others because he does not allege that he or the LLC was a customer of Wells Fargo, or had any relationship with Wells Fargo whatsoever. Rather, he seeks to hold Wells Fargo liable merely because it was the *recipient* bank in the disputed funds transfers. He does not allege, however, that anyone informed Wells Fargo at the time that the transfers were unauthorized. Instead, he postulates that Wells Fargo "should have" divined as much from so-called "red flags," but he does not explain how Wells Fargo possibly could have had insight into the internal corporate affairs of a non-

---

[19] *Kenney v. BofA*, C.D. Cal. No. 2:25-cv-02726-MWC-PVC. "[O]n [a] motion to dismiss [a] court may take judicial notice of matters of public record including court records in other actions." *ScoreBlue, LLC v. Locum Tele PC*, 2024 WL 5372398, *4 (C.D. Cal. 2024).

[20] *Kenney v. JPMorgan Chase Bank, N.A.*, C.D. Cal. No. 2:25-cv-02923-JFW-AGR.

[21] *Kenney v. Fifth Third Bancorp et al.*, S.D.N.Y. No. 1:25-cv-03590-ALC.

[22] *Kenney v. PayPal Holdings, Inc.*, C.D. Cal. No. 2:25-cv-02842-JAC-AGR.

[23] For purposes of this motion only, Wells Fargo credits Plaintiff's allegations that California law governs his claims. (Complaint ¶¶ 20(a), 28, 37-42, 47.)

customer.[24] Plaintiff likewise does not explain why he thinks a third-party bank, even if it has suspicions, is free to refuse to credit incoming funds to the accounts to which they are directed.

Plaintiff also alleges that, years after the transfers, in November 2024, he sent a letter finally informing Wells Fargo of the alleged fraud, and demanding that it reverse the transactions—but he does not and cannot allege that the accounts were still open at that late date. Blowing past that nettlesome detail, he asserts that "as a result of Defendant's failure to act as required or even respond to this letter, Plaintiff's reputation tanked" and his business "fell apart."[25] He does not explain how a failure to respond to this belated letter could have had any effect on his business or reputation, nor does he attempt to square this implausible allegation with the article he attaches to his Complaint: That article is dated 10 months *before* his letter, makes clear that his reputation already was in tatters from decades of self-inflicted wounds, and that his "raw food empire" long had been "crumbling."[26] In any event, Plaintiff does not provide any basis for his apparent belief that a bank is free to raid a customer's account and give the money to a non-customer based solely on the non-customer's say-so.

## III. ANALYSIS

### A. <u>The Complaint Should Be Dismissed Under FRCP 12(b)(1) And FRCP 17 Because Plaintiff Does Not Hold The Claims</u>

The Courts uniformly hold that a member of an LLC, even the sole member, cannot sue for harm to the LLC. Some courts reach this holding based on Article III standing, others based on prudential standing, and others based on FRCP 17's requirement that the plaintiff be the real party in interest. Regardless of the courts' rationales, however, the outcome is always the same: dismissal.

---

[24] Complaint ¶¶ 3, 52.

[25] *Id.* ¶ 18.

[26] *Id.* Ex. E at 1, 3.

For example, in *Brown v. Department of Water & Power*, 2024 WL 5466666, (C.D. Cal. 2024), Judge Wilson dismissed claims brought by an LLC member notwithstanding that "a financial injury to [the LLC] certainly has a negative financial effect on Plaintiff," explaining:

> The members of an LLC generally do not have [Article III] standing to sue on the basis of injuries sustained by the LLC. This is because members of an LLC do not have an ownership interest in property to which the LLC holds title. Accordingly, where the gravamen of the complaint is injury to an LLC's property, the right of action lies with the LLC, not the individual members … .

*Id.* *3-4; *accord CF Gainesville Investor, LLC v. Astroenergy Solar, Inc.*, 2022 WL 1422810, *4 (C.D. Cal. 2022) ("Even though plaintiff owns 100 percent membership interests … , members of an LLC lack standing to assert individual claims based on harm to the LLC."); *Solarmore Mgmt. Servs., Inc. v. Bankruptcy Estate of DC Solar Sols.*, 2021 WL 3077470, *3 (E.D. Cal. 2021) ("In general, … members of an LLC lack prudential standing to assert individual claims based on harm to the … LLC … ."); *Vacchiano v. Wessell*, 2014 WL 1225301, *3-4 (C.D. Cal. 2014) (holding that FRCP 17 and prudential standing requirements preclude an entity's owner from pursuing a claim for funds taken from the entity's account).

The same result follows here for the same reasons. Plaintiff's Complaint and its attachments make clear that the money belonged to the LLC, not to Plaintiff personally. He pleads that it was "the Company's assets [that] were misappropriated,"[27] that Bronfeld "stole MK Cuisine Global, LLC funds,"[28] and

[27] Complaint Ex. D (Letter from Plaintiff to Wells Fargo) at 1.
[28] *Id.* ¶ 17.

that the money is "the rightful property of MK Cuisine Global, LLC."[29] Plaintiff therefore has no claim relating to the funds transfers.

Nor can Plaintiff manufacture standing by alleging that failure to respond to his November 2024 letter caused "companies Plaintiff took part in to fail" and tarnished his "good name."[30] *First*, his allegation that "companies" experienced harm is just more of the same—an admission that he lacks standing to sue personally. *Second*, his assertion that an alleged failure to respond to a letter somehow caused businesses to fail or his reputation to "tank[]"[31] is wildly implausible and therefore fails the *Twombly/Iqbal* standard. *Third*, Plaintiff's assertion is unadorned with supporting facts, and thus is precisely the type of "conclusory allegation[] that [a] Court disregard[s] when … considering [a] motion to dismiss." *Sandoval v. Lockheed Martin Corp.*, 2025 WL 1127853, *3 (C.D. Cal. 2025).

Further, the claims Plaintiff asserts either are not premised on the letter or do not permit recovery of damages for business or reputational harm. The fraud claim is premised entirely on statements that, though unspecified, plainly have nothing to do with the letter.[32] The aiding and abetting fraud claim likewise is attenuated from the letter,[33] and so will not support recovery for harms allegedly arising from the letter. *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220, 1252 (1991) ("A damage award for fraud will be reversed where the injury is not related to the misrepresentation."). The aiding and abetting conversion claim rests entirely on the funds transfers, not the letter,[34] and in any event, conversion generally

---

[29] *Id.* Ex. D (Letter from Plaintiff to Wells Fargo) at 1.
[30] *Id.* ¶ 18.
[31] *Id.*
[32] Complaint ¶ 24.
[33] *Id.* ¶¶ 27-31.
[34] Complaint ¶¶ 32-36.

permits recovery only of "the value of the property converted." *Myers v. Stephens*, 233 Cal.App.2d 104, 116 (1965). The UCL and unjust enrichment claims do not permit recovery of damages *at all*, but only of restitution, *i.e.*, the "*return* of property or funds." *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 453 (2005); *accord Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487 F. App'x 362, 363 (9th Cir. 2012) ("[D]amages … are simply not available under the UCL."). And constructive trust is an equitable remedy that by its nature does not permit recovery of damages, nor does Plaintiff seek damages in connection with his constructive trust allegations.[35]

Simply put, Plaintiff does not hold the claims, and regardless of the validity of the claims, has no personal right of recovery against Wells Fargo. All claims should be dismissed on this basis.

## B. The Complaint Should Be Dismissed Under FRCP 12(b)(6) Because Plaintiff Does Not And Cannot State A Viable Claim

### 1. The Claims Are Categorically Foreclosed

The claims also fail on the merits as a matter of law. It is hornbook law that "[b]anks do not owe a duty of care to non-customers to protect them from the tortious conduct of the banks' customers." *Sliders Trading Co. v. Wells Fargo*, 2017 WL 6539843, *8 (N.D. Cal. 2017). Similarly, "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder." *Casey v. U.S. Bank*, 127 Cal.App.4th 1138, 1149 (2005).[36] There is a good reason for this: Requiring "[s]crutiny into the financial and business

---

[35] Complaint ¶¶ 43-52.

[36] Courts recognize a "narrowly circumscribed" exception that can create a duty of inquiry in the case of a check made out to a third party that the depositor seeks to negotiate for the depositor's own benefit. *QDOS, Inc. v. Signature Fin., LLC*, 17 Cal.App.5th 990, 1000 & n.3 (2017). This exception does not apply to wire transfers "deposited into the precise accounts to which they were directed." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481 (1996).

affairs of … customers for the express purpose of ferreting out [a] faithless fiduciary [or] divining illegal conduits for embezzled funds would be intrusive for the citizenry and add to the cost of financial transactions, both in terms of time and money." *Casey*, 127 Cal.App.4th at 1150; *accord Chicago Title Ins. Co. v. Superior Court*, 174 Cal.App.3d 1142, 1159 (1985) (observing that a contrary rule would wreak a "loss of privacy, expense and commercial havoc").

That Wells Fargo did not owe a duty to Plaintiff, a non-customer, refutes any liability on Plaintiff's allegations that Wells Fargo "should have" divined from "red flags" that fraud was afoot, and should have refused or reversed the wire transfers.[37] The Court need go no further than that. But there is more:

A bank accepting an incoming funds transfer is *statutorily required* to credit the account to which the funds are directed, is *statutorily prohibited* from reversing the transaction absent a court order or other circumstances not alleged here, and is *statutorily immunized* from liability. The California Commercial Code (the "Commercial Code") adopts Article 4A of the Uniform Commercial Code ("UCC"), which sets forth "detailed rules and procedures" for wire transfers, and preempts state law claims whose "gravamen" is that the bank "should not have accepted and executed" the transfers. *Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239, 244, 254 (2007). The Commercial Code recognizes that incoming funds transfers typically "are processed by automated means," Cmt. 3 to UCC § 4A-207 (codified in Commercial Code § 11207),[38] and provides that, upon acceptance, "the bank is *obliged* to pay the amount of the order to the beneficiary of the order." Comm. Code § 11404(a). Consequently, a bank "may safely ignore" any claim by the sender of the funds "that the beneficiary is not entitled to payment because of fraud." Cmt. 3 to UCC § 4A-404.

---

[37] Complaint ¶¶ 3, 52.

[38] Official comments to UCC Article 4A are "persuasive" in interpreting the Commercial Code. *Zengen*, 41 Cal.4th at 252.

By the same token, once a bank credits its customer's account, the bank is not at liberty to reverse the transaction merely because a non-customer claims fraud. Rather, California Financial Code § 1450 mandates that "[n]otice to any bank of an adverse claim … to a deposit standing on its books … *shall be disregarded*" unless "the adverse claimant procures and serves upon the bank … a restraining order, injunction, or other appropriate order."[39] Further, § 1450 provides that a bank that disregards an adverse claim does so "*without any liability* on the part of the bank"—an immunity that "protect[s] banks from getting caught in a crossfire between its depositors and strangers claiming entitlement to its accounts." *AARTS Prods., Inc. v. Crocker Nat'l Bank*, 179 Cal.App.3d 1061, 1069 (1986) (predecessor statute).

Accordingly, courts consistently hold that a fraud victim cannot sue the perpetrator's bank to recover the victim's losses. For example, in *MUR Shipping B.V. v. BofA*, 2019 WL 13133670 (C.D. Cal. 2019), the plaintiff alleged that its funds were fraudulently transferred to the defendant bank, and that, unlike here, the plaintiff's own bank had notified the defendant while there was still time to reverse the transactions. The plaintiff sued after the defendant nevertheless credited its customer's account and the customer withdrew and absconded with the money. Judge Phillips dismissed the claims with prejudice, holding that the defendant was both permitted and required to do exactly what it did:

> Article 4A … not only governed Defendant's actions after the completion of the transfer, it required Defendant to allow the accountholder to make the withdrawals. The [UCC official comments]

---

[39] A bank also can temporarily freeze an account if the "adverse claimant delivers to the bank … an affidavit stating [the accountholder] is a fiduciary for the adverse claimant and … is about to misappropriate the deposit." Cal. Fin. Code § 1450(a). Plaintiff does not allege that he delivered any such affidavit, or for that matter, that he provided Wells Fargo with *any* notification until *years* after the transfers had been completed.

> specifically contemplate[] [that] … a "fraud … claim of the originator … does not affect the obligation of the beneficiary's bank to pay the beneficiary," and the beneficiary's bank therefore must "ignore any instruction by the originator to withhold payment to the beneficiary." … This is in accordance with Cal. Fin. Code § 1450, which, subject to two narrow exceptions that do not apply here, requires a bank receiving notice of an adverse claim to disregard such notice … .

*Id.* *3-4. Judge Phillips concluded that although the plaintiff may have "claims against the actual perpetrator of the fraud, … an attempt to hold [the bank] liable for the swindle is misplaced." *Id.* *4.

Myriad other cases have reached the same conclusion. *E.g.*, *Venture Gen. Agency, LLC v. Wells Fargo*, 2019 WL 5213005, *4 (N.D. Cal. 2019) (dismissing under § 1450 because Wells Fargo "was required to … disregard[] any claims by Plaintiffs to the transferred funds … without incurring liability"), *aff'd*, 829 F. App'x 837, 838 (9th Cir. 2020); *Trabulsi v. Wells Fargo*, 2018 WL 6444897, *2-3 (C.D. Cal. 2018) (dismissing claims under § 1450); *Sliders*, 2017 WL 6539843, *7-8 (holding that Article 4A preempted a claim against a bank receiving fraudulently induced wires, and that there could be no liability for failing to "notice[] red flags").

Because Wells Fargo did not owe a duty to Plaintiff, and because Plaintiff seeks to hold Wells Fargo liable for doing what controlling statutes both permitted and required, all the claims should be dismissed with prejudice.

**2. <u>The Claims Also Fail On Individual Claim-Specific Grounds</u>**

The claims also fail on numerous additional independently dispositive grounds:

**<u>Fraud Claim</u>:** Under FRCP 9(b), the "circumstances constituting fraud" must be pled "with particularity" by "identify[ing] the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the

purportedly fraudulent statement." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). A plaintiff's "*pro se* status does not absolve [the plaintiff] of the[] obligation to plead fraud with particularity." *Colenzo v. FDIC*, 2011 WL 13177024, *4 n.21 (C.D. Cal. 2011).

Plaintiff comes nowhere close to satisfying Rule 9(b). He premises his fraud claim entirely on supposed statements by Wells Fargo, but he does not specify any such statements.[40] Instead, he proffers a list of broad topics (*e.g.*, compliance and customer relations), and cross-references 53 pages of printouts from Wells Fargo's website without explaining the significance of, or relevant content within, those documents.[41] His failure to identify "the specific content of the false representations" requires dismissal. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc); *accord EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (dismissing fraud-based claim under Rule 9(b) where "Plaintiff identifies three separate communications by [the defendant] that include alleged false statements without *specifying* which statements are allegedly false").

Further, Plaintiff does not even gesture at the other circumstances of fraud that Rule 9(b) requires him to plead. He says nothing of who made the statements, what made them false or misleading, or when Plaintiff supposedly heard or read them. In fact, he does not even allege that Wells Fargo made statements *to him* as opposed to the public at large on its website. Nor does he allege facts indicating that he relied to his detriment on any of the statements, which is an essential element of fraud. *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). At most, Plaintiff simply mouths some of the elements of a fraud claim (*e.g.*, "knowingly

---

[40] Complaint ¶ 24.

[41] *Id.* ¶¶ 24-25.

misrepresented material facts," and "Plaintiff reasonably relied").[42] But such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" even under ordinary pleading standards, let alone Rule 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The fraud claim should be dismissed.

**Aiding and Abetting Fraud Claim:** Plaintiff's aiding and abetting fraud claim also flunks Rule 9(b), which applies to "all elements of aiding and abetting a fraud." *Imac Funding Corp. v. Endresen*, 2015 WL 13916649, *2 (C.D. Cal. 2015). To the extent Plaintiff postulates that Wells Fargo aided and abetted fraud by Bronfeld, he does not adequately plead fraud by Bronfeld in the first place; though he makes vague references to Bronfeld "alter[ing] access controls and misus[ing] Plaintiff's personal identifying information and credentials," he provides no particulars aside from neutral dates and amounts of transfers.[43]

Further, Plaintiff acknowledges that he must plead facts showing that Wells Fargo had "*actual knowledge* that fraudulent transactions were occurring."[44] He cannot get by merely by saying that Wells Fargo "knew something fishy was going on," but instead must plead facts showing "actual knowledge of a specific primary violation." *Casey*, 127 Cal.App.4th at 1148-49; *accord Lum v. Merlin Entm'ts Group U.S. Holdings, Inc.*, 2023 WL 2583307, *9 (S.D. Cal. 2023) (holding that "conclusory allegations" of knowledge "are insufficient" under Rule 9(b)). Indeed, where, as here, the plaintiff is not a customer of the bank, "actual knowledge" allegations receive especially "careful scrutiny" and "strict application of the pleading requirement," lest an aiding and abetting claim open a back door to

---

[42] Complaint ¶¶ 24-25.

[43] Complaint ¶ 14 & Exs. B-C.

[44] *Id.* ¶ 28.

liability in contravention of the rule that "a bank owes no duty to nondepositors." *Casey*, 127 Cal.App.4th at 1149.

Yet the Complaint nowhere alleges—even in conclusory terms—that Wells Fargo had the requisite "actual knowledge." Instead, the Complaint relies on so-called "red flags" to posit that Wells Fargo "*should* have been aware" that fraud was afoot.[45] That is the opposite of "actual knowledge," and is fatal to the aiding and abetting claim. *Superclinics USA, Inc. v. JPMorgan Chase Bank, N.A.*, 2023 WL 5007873, *3 (C.D. Cal. 2023) (dismissing aiding and abetting fraud claim despite allegation that bank "knew of … the actions of" the tortfeasors because the only supporting facts alleged were "aware[ness] of numerous red flags"); *S&S Worldwide, Inc. v. Wells Fargo*, 509 F. Supp. 3d 1154, 1166 (N.D. Cal. 2020) (dismissing aiding and abetting fraud claim for failing to allege "[the bank] had actual knowledge of [the tortfeasor's] scheme to trick [the plaintiff] into wiring funds").

**Aiding and Abetting Conversion Claim:** The aiding and abetting conversion claim likewise must be dismissed for failure to plead facts showing actual knowledge. *S&S Worldwide*, 509 F. Supp. 3d at 1165 (dismissing aiding and abetting conversion claim on this basis); *Freeney v. Bank of Am. Corp.*, 2015 WL 12535021, *22 (C.D. Cal. 2015) (dismissing aiding and abetting conversion claim "because plaintiffs fail plausibly to allege that [the bank] knew of [the perpetrator's] conversion of [the plaintiff's] assets").

**UCL Claim:** The UCL claim fails for many reasons. *First*, relief under the UCL is equitable, and as such, is unavailable if "the plaintiff has [an] adequate legal remedy." *Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). Yet Plaintiff's "complaint does not allege," even in conclusory terms, that he "lacks an adequate legal remedy," which is a fatal pleading defect. *Sonner v.*

---

[45] Complaint ¶¶ 3, 52.

*Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of a UCL claim on this basis). To the contrary, Plaintiff brings multiple damages claims, which as a matter of law constitute an adequate remedy regardless of whether they are subject to dismissal. *Lightner v. Medtronic Inc.*, 2021 WL 4731351, *3 (C.D. Cal. 2021) ("The test is "whether an adequate damages remedy is available, not whether the plaintiff … will be successful with that remedy.").

*Second*, Plaintiff cannot obtain either monetary or injunctive relief under the UCL. He cannot obtain *monetary* relief because a "plaintiff may recover … restitution under the UCL, but not damages," and Wells Fargo has nothing to restitute. *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013). Plaintiff admits that the money went into accounts held or controlled by *Bronfeld*, not into Wells Fargo's own proprietary accounts.[46] *Marsh v. Zaazoom Sols., LLC*, 2012 WL 952226, *14 (C.D. Cal. 2012) (dismissing UCL claim against banks receiving unauthorized transfers because "[n]o conduct can be alleged which shows [the banks] had an ownership interest in the deposits," and the banks "cannot be held liable for restitution of money that [the perpetrators] may have taken"). Plaintiff's vague reference to Wells Fargo charging "[f]ees and transaction charges" in connection with the wires does not establish a basis for restitution; this is nothing more than a "conclusory allegation[] that [a] Court disregard[s] when … considering [a] motion to dismiss," *Sandoval*, 2025 WL 1127853, *3, and in any event, Plaintiff does not allege that *he* paid any such fees, or even that the LLC paid them, as opposed to Bronfeld paying them.

Plaintiff cannot obtain *injunctive* relief because he lacks standing under both Article III and the UCL to seek such relief, in that he cannot allege "a sufficient likelihood that [he] will be wronged again in a similar way." *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 862 (9th Cir. 2014) (holding that

[46] Complaint ¶¶ 2, 19 & Ex. D at 1.

Article III standing for prospective relief requires a likelihood of recurrence); *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009) (holding that under the UCL, "[a]n injunction should not be granted as punishment for past acts where it is unlikely that they will recur"). Indeed, Plaintiff admits that Bronfeld is now a "*former* employee," such that there is no risk of him engaging in any further unauthorized funds transfers.[47]

*Third*, Plaintiff does not allege conduct by Wells Fargo that was "unfair," "fraudulent," or "unlawful," as required to state a UCL claim. Cal. Bus. & Prof. Code § 17200. He does not and cannot allege "unfair" conduct because, as discussed above, Wells Fargo's conduct was both permitted and required by Article 4A and § 1450: "[C]ourts may not use the unfair competition law to condemn actions the Legislature permits," much less that the Legislature affirmatively requires. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011).

Plaintiff's UCL claim also does not allege "fraudulent" conduct. In fact, his UCL claim does not even try to do so, and instead expressly and exclusively relies on the "unlawful and unfair" prongs of the statute.[48] In any event, "[t]o the extent [Plaintiff] intends for his UCL claim to borrow from his insufficiently alleged fraud claim[], his UCL claim … fails because, as discussed above, he has not pled fraud with sufficient specificity." *Poston v. Gen. Motors, LLC*, 2024 WL 3558377, *8 (S.D. Cal. 2024); *see also Anderson v. PHH Mortg.*, 2012 WL 4496341, *4 (C.D. Cal. 2012) ("A UCL claim that is premised on fraud must satisfy 9(b).").

Plaintiff also fails to allege "unlawful" conduct, *i.e.*, a practice that is "forbidden by" another "law." *Anderson*, 2012 WL 4496341, *4. In fact, Plaintiff largely fails even to identify another applicable law. He cites what he calls the

---

[47] Complaint ¶ 2.

[48] Complaint ¶ 40.

"Anti-Money Laundering Act,"[49] but does not specify whether he means the Annunzio-Wylie Money Laundering Act of 1992 (106 Stat. 4044) or the Anti-Money Laundering Act of 2020 (included in 134 Stat. 3388); and in any event, he does not identify any particular provision he claims Wells Fargo violated. He also references the Bank Secrecy Act (a collection of statutes and amendments codified across Titles 12 and 31 of the United States Code)[50] and what he calls "Know Your Customer (KYC) Requirements,"[51] but again, he does not identify any particular provision he claims Wells Fargo violated. Plaintiff's attempts to invoke these underlying laws must be disregarded because "neither the Court nor defendant should have to guess at the laws and regulations that [P]laintiff rel[ies] upon, or at how [the defendant's] conduct measures up to them." *Williams v. J.P. Morgan Chase Bank, N.A.*, 2023 WL 3590682, *2 (N.D. Cal. 2023).

When Plaintiff *does* specify a particular statute or regulation, it is clear that it cannot support a UCL claim. 18 U.S.C. § 1028[52] is a criminal statute prohibiting identity theft, and Plaintiff does not accuse Wells Fargo of identity theft. 12 U.S.C. § 5565(a)(1)[53] concerns remedies available to the Consumer Financial Protection Bureau, and is irrelevant here. And 31 C.F.R. § 1020.320(a)(2)(i)-(iii),[54] which requires banks to file Suspicious Activity Reports ("SARs") with the Treasury Department in certain circumstances, does not help him. UCL claims "are preempted to the extent that they rely on [a bank's alleged] failure to file a SAR." *In re Woodbridge Invs. Litig.*, 2020 WL 4529739, *4 (C.D. Cal. 2020) (citing 12

---

[49] Complaint ¶ 20(c).

[50] *See* Financial Crimes Enforcement Network, *The Bank Secrecy Act*, *available at* https://www.fincen.gov/resources/statutes-and-regulations/bank-secrecy-act (visited May 28, 2025).

[51] Complaint ¶ 20(d), (e).

[52] Cited at Complaint ¶ 20(b).

[53] Cited at Complaint at p. 11 ¶ 3(a).

[54] Cited at Complaint ¶ 39.

C.F.R. §§ 21.11(k), 208.62(j)). This is because "federal law prohibits banks from disclosing the existence of a[] SAR," and the only way to defend against a claim alleging a failure to file a SAR would be to "violate federal law" by disclosing whether one was filed—an untenable "dilemma" that would frustrate the federal statutory scheme. *Id.*

**Unjust Enrichment Claim:** The unjust enrichment claim fails because it permits only restitution, and as such, is duplicative of the UCL claim. *Steele Logistics Inc. v. Advance Funds Network LLC*, 2025 WL 870124, *6-7 (C.D. Cal. 2025) (dismissing unjust enrichment claim as "duplicative" of UCL claim). Unjust enrichment is also an equitable claim that is unavailable where, as here, there is an adequate legal remedy. *Madrigal v. Hint, Inc.*, 2017 WL 6940534, *5 (C.D. Cal. 2017) (dismissing unjust enrichment and UCL claims because the plaintiff had an adequate remedy at law). And the claim fails on the merits because, as discussed above, Wells Fargo has nothing to restitute; Plaintiff does not and cannot allege that Wells Fargo, as opposed to Bronfeld, "retained a benefit at [Plaintiff's] expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).

**Constructive Trust:** The constructive trust "claim" should be dismissed because constructive trust is a "remedy," "not an independent cause of action." *A.B. Concrete Coating Inc. v. Wells Fargo*, 491 F. Supp. 3d 727, 736 (E.D. Cal. 2020). Further, a plaintiff "must identify a particular *res* of funds in [the defendant's] possession in order to impose a constructive trust on those funds," and Plaintiff does not and cannot allege that the funds are still at Wells Fargo years after the transfers, or even that the subject accounts are still open. *Jaffee v. Carryl*, 2016 WL 3511782, *3 (C.D. Cal. 2016).

In short, Plaintiff fails to plead a viable claim, even apart from the fact that he lacks standing and that the claims are categorically foreclosed by California law.

### 3. <u>The Claims Are Largely Time-Barred</u>

Each of the claims is subject to a three-year statute of limitations, except the UCL claim, which is subject to a four-year statute. Cal. Code Civ. Proc. § 338(c), (d) (three years for fraud and conversion); *Wilber v. BofA*, 2015 WL 13919430, *3 (C.D. Cal. 2015) ("The statute of limitations for aiding and abetting [under California law] is the same as the statute of limitations for [the] underlying wrongful act."); *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1155 (N.D. Cal. 2023) ("The statute[] of limitations for unjust enrichment [under California law] … [is] based on the underlying wrong. If founded on conversion, fraud, or mistake, it is three years."); *Healthcare Ally Mgmt. of Cal. LLC v. United Healthcare Servs., Inc.*, 2023 WL 11053462, *4 (C.D. Cal. 2023) ("[A]n action seeking to establish a constructive trust [under California law] is subject to the limitation period of the underlying substantive right."); *see also* Bus. & Prof. Code § 17208 (four years for UCL claims).

The statute of limitations for the aiding and abetting conversion claim began running for each funds transfer on the date of the transfer because it "begins to run from the date of the conversion even [if] the injured person is ignorant of his rights." *In re U.S. Invs. Co. of Am.*, 5 F. App'x 779, 780 (9th Cir. 2001) (California law); *accord Healthcare Ally*, 2023 WL 11053462, *4 ("The statute begins running from the date of the taking giving rise to the claim for conversion."). An aiding and abetting conversion claim is not subject to the discovery rule except in the case of fraudulent concealment, which Plaintiff does not allege, or concealment in breach of a fiduciary duty, which Plaintiff cannot allege because "a bank does not owe a fiduciary duty [even] to its … customers," let alone non-customers. *AmerUS Life Ins. Co. v. BofA*, 143 Cal.App.4th 631, 639 (2006).

The statutes of limitations for the other claims began running on or around the time of each transfer because those statutes commenced, at the latest, when Plaintiff had "notice or information of circumstances to put a reasonable person on inquiry."

*Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397-98 (1999). Plaintiff was on notice of each transfer around the time it occurred because, at a minimum, he could see the transfers on the monthly account statements provided by the originating banks; indeed, that an accountholder "receive[s] monthly statements and other information from the banks where those accounts are located is sufficiently well-known to be judicially noticeable." *United States v. Ali*, 2014 WL 5790996, *5 (D. Md. 2014); *accord Kaggen v. IRS*, 71 F.3d 1018, 1020 (2d Cir. 1995) (taking "judicial notice of the fact that banks … send monthly statements to customers"); *United States v. Tervort*, 2008 WL 5273492, *6 (E.D. Cal. 2008) ("[I]t is common knowledge that banks … keep records and send out statements[s] … .").[55]

The claims are largely time-barred based on the foregoing. Plaintiff pleads that the funds transfers occurred "between April 23, 2021 and August 23, 2022,"[56] though he elsewhere confusingly indicates they occurred between "02/25/21" and "12/31/21."[57] Regardless, he did not file this case until April 10, 2025[58]—more than three years after the overwhelming majority of the transfers, and more than four years after some of the transfers if one uses the earlier start date. Accordingly:

- The aiding and abetting conversion claim must be dismissed to the extent it is premised on transfers occurring before April 10, 2022 (three years before Plaintiff filed suit).

---

[55] Plaintiff cannot dispute his receipt of account statements on the grounds that it was the LLC, not him personally, that was the accountholder (an argument that, of course, would only underscore that dismissal is required on standing grounds). Plaintiff alleges that he was "the only one authorized to open accounts on behalf of MK Cuisine Global, LLC," that the LLC was "Plaintiff's business[]," and that the accounts were controlled through "Plaintiff's personal … credentials." (Complaint ¶¶ 1, 14, 18.)

[56] Complaint ¶ 15; *see also id.* Ex. B (chart alleging transfers from "04/23/21" to "08/23/22").

[57] *Id.* Ex. C.

[58] Complaint at caption page (showing file-stamp date).

- The other non-UCL claims must be dismissed to the extent they are premised on transfers occurring on or before February 28, 2022 (because Plaintiff necessarily would have received a monthly account statement covering February 2022 no later than the end of March 2022, and thus would have known more than three years before filing suit of transfers occurring in or before February 2022).
- The UCL claim must be dismissed to the extent it is premised on transfers occurring on or before February 28, 2021 (same analysis as above, but backed up one year on account of the longer limitations period for UCL claims).

Plaintiff cannot evade dismissal by contending that he discovered the claims more recently, for the reasons stated above. Moreover, "the discovery rule will only apply when the complaint 'specifically pleads facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Rand v. Midland Nat. Life Ins.*, 857 Fed. App'x 343, 347 (9th Cir. 2021) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)). The Complaint does not even *attempt* to meet these twin burdens. The Complaint therefore should be dismissed as untimely to the extent set forth above.

**IV. CONCLUSION**

For the reasons stated above, this case should be dismissed with prejudice.

DATED: June 5, 2025

MUNGER, TOLLES & OLSON LLP

By: /s/ James C. Rutten

James C. Rutten

Attorneys for Defendant WELLS FARGO BANK, N.A.

55166184.4

**LOCAL RULE 11-6.2 CERTIFICATION**

The undersigned, counsel of record for Defendant Wells Fargo Bank, N.A., certifies that this brief contains 6879 words, which complies with the word limit of Local Rule 11-6.1.

DATED: June 5, 2025

MUNGER, TOLLES & OLSON LLP

By: /s/ James C. Rutten
James C. Rutten

Attorneys for Defendant WELLS FARGO BANK, N.A.